AARON C. ENGLAND v. WILLIAM FORBES, ROBERT R. BANKS and JAMES MARTIN, Sheriff.

*Sale of Personal Property—Fraudulent Representations of Purchaser—Rescinding Sale—Subsequent Execution Lien—Replevin.*

In a sale of personal property to be paid for after delivery by note with approved security, the property and title passes to the purchaser immediately upon the delivery of the goods, and the property cannot be repossessed by the seller should the purchaser fail to give the promised note.

Where goods are sold to a person upon his false representation as to his solvency or ability to pay, the seller may rescind the contract of sale and retake the goods if they have been delivered to the buyer.

After possession has been obtained by the purchaser under a fraudulent representation as to his solvency, an execution issuing at the suit of a *bona fide* judgment creditor, having no notice or knowledge of such representation, the lien of the levy thereby made will sold good against the defrauded seller.

Mere insolvency of the buyer, well known to himself and concealed from the seller, does not, in itself, furnish sufficient ground for rescinding the contract of sale.

The fraudulent purchasing and obtaining of goods with an intention of never paying for them, will not, of itself, render the sale absolutely void, but voidable only at the election of the seller. This election cannot be used against an innocent purchaser for value or a *bona fide* execution creditor having a levy thereon.

In an action of replevin for goods sold and delivered, and the sale for proper cause afterwards being rescinded by the seller, the defendant is entitled to a verdict for the value of any goods taken, other than those received from the plaintiff in the rescinded sale.

(*New Castle, November, 1885.*)

REPLEVIN.

The plaintiff, Aaron C. England, resides and does business at Glen Mills, Delaware county, Pa. In April, 1884, Mr. Banks called upon him and talked about getting a lot of hickory spokes, and arranged for two carloads, about 21,000 spokes, agreeing to pay for the same, after their delivery, in a note with an approved endorser, after which they were to become the property of Forbes

& Banks. A few days after the delivery of the last of the spokes, Mr. England came to Wilmington, and learned that Forbes & Banks had been levied upon by the sheriff. He found their mill still going, however, and the spokes being used. He called on the firm and asked for the promised note, but they regretfully pleaded their financial difficulties and declined to comply. He·learned that the judgment under which the levy was made had been entered before the arrangement with him, and that it was held by a brother of Mr. Banks, of the firm. About 4,000 of the spokes had already been used. He learned that the firm had a bad reputation, and immediately went to the coroner and replevined the goods.

*Anthony Higgins* and *J. H. Hoffecker, Jr.*, for plaintiff:

I. The plaintiff prays the court to instruct the jury that if they believe from all the circumstances in the case that the agreement between England and Robert R. Banks on April 11, 1884, was a conditional sale only under the terms of which the property in the spokes was not to pass to Forbes & Banks until the latter had given England a note as good as cash in payment therefor— that the plaintiff had a legal right to replevin said spoke.

II. That if the jury believe from all the circumstances in the case that the contract of April 11, 1884, was an absolute sale, but that England was induced to make said contract through the fraudulent representations of the defendant, R. R. Banks, such fraudulent representations vitiated said contract, and made said sale voidable, and that the plaintiff England had the legal right to rescind said sale and replevin his spokes.

III. That if the jury believe from all the circumstances in the case (the circumstances relied upon being,

1. Insolvency of the firm and suppression of that fact ;

2. Judgment and execution pending at the very time of the contract, April 11, 1884 ;

3. Giving DuBois a check about this time, when they had no funds to meet it ;

4. Falsely stating to England that their credit was good, that they could get trusted anywhere, and that they met their notes as they matured.

5. That Forbes & Banks bought the spokes intending at the time not to pay for them, that the plaintiff had the legal right to avoid said sale and replevin his spokes.

IV. That Edwin R. Banks, under whose execution James Martin, sheriff, justifies, cannot hold the property as a bonafide purchaser against the rights of the vendor, England, as the plaintiff. in the execution.

*Benj. on Sales,* Sec. 440, and Note (E); *Benj. on Sales,* Sec, 443; *Mears et. al. v. Waples,* 3 Houst., 581; *Alsberg Case,* U. S. C. C., Dist. of Del., 1877; *Donaldson v. Farwell,* 93 U. S. S. Ct., 631, and cases cited in note; *Stewart v. Emerson,* 52 N. H., 301; *Stewart v. Emerson,* 8 W. B. Register, 462; *Ash v. Putnam,* 1 Hill, 302; *Cary v. Samuel,* 1 Hill, 311; *Derve v. Brandt,* 53 N. Y., 466; *Naugatuck v. Babcock,* 22 Hun., 481; *Buckley v. Archer,* 21 Barb., 585; *Bussing v. Rice,* 2 Cush·, 48; *Chaffee v. Fort,* 1 Lansing, 81; *Wiggin v. Day,* 9 Gray, 97; *Barnard v. Campbell,* 58 N. Y., 73; *Byrd v. Hall,* 2 Keyes, 647; *Johnson & Monell,* 2 Keyes, 655; *Noble v. Adams,* 7 Taunt., 59; *Buffington v. Ernick,* 15 Mass., 156; *Andrew v. Dieterich,* 14 Wend., 31.

*Thomas Davis* and *Benjamin Nields,* for defendant:

The defendants pray the court to charge the jury as follows:

1. That after delivery of the goods in pursuance of a sale, the seller cannot rescind the contract or reclaim the goods on the ground of fraud without proving deceptive assertions, or false representations in some form or other, fraudulently made to induce him to part with his property. Mere insolvency of the buyer, though well known to himself and concealed from the seller, does not in itself furnish sufficient ground for recinding a contract of sale.

3 Houston, 621; *Noble v. Adams,* 7 Taunton, 259; *Hilliard on Sales,* 307.

2. That an intention to deceive, and a false statement even, on a material point, will not overthrow the bargain, unless the statement was the means which produced the bargain and the onus is on the plaintiff to prove that the plaintiff acted on the faith of the false representation.

30 Penna. State Reports, 401; *2 Chilly on Pleadings,* (16 Am. ed.), 519; *2 Parsons on Contracts,* 267.

3. If the plaintiff chose to act on his own judgment with

full knowledge or means of knowledge of the facts he cannot be heard to say he was deceived by the defendant's representations respecting them.

*Allwood v. Small*, 6 Clark & Finnally (Am. ed.), 233.

4. That in the absence of any stipulation to the contrary the fair presumption is that the vendor, by delivering the goods before the condition is performed, waives the condition and trusts to the responsibility of his vendor.

4 Houston, 79 ; *Alderdice et. al. v. Truss et. al.*, 2 Houston, 268.

5. That if the jury should believe from the evidence that part of the spokes was the property of the plaintiff and part thereof was the property of the defendant, that the plaintiff is entitled to nominal damages for the unlawful detention of his property and that the defendants must have a verdict for the value of such of the spokes as are found not to be the plaintiff's property and damages for the taking of them on the writ.

*Powell v. Hensdale*, 5 Mass., 342 ; *Clarly v. Adair*, 3 Harr., 113.

COMEGYS, C. J., charging the jury :

Wherever there is a sale of personal property, where nothing remains to be done by the seller before it is delivered, the property passes to the buyer without delivery ; and if injured or destroyed after the sale, the loss falls upon the purchaser, and the seller is entitled to payment of the price.

The right of property and the right of possession are distinct. The former may be in one person, and the latter in another. A seller may have a qualified right to retain the goods sold until payment is made, and yet the property in the goods may be in the purchaser.

Where there is an immediate sale, and nothing remains to be done by the seller as between him and the buyer, the property in the thing sold vests in the buyer, and all the consequences resulting from the vesting follow.

When there is a sale of goods generally, no property in them passes until delivery, because until then the very goods sold are not ascertained ; but when, by the contract itself, the seller sets

apart, or appropriates to the vendee, a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after delivery of goods in pursuance of a general contract. The appropriation of the chattel is the same as delivery by the seller, and the assent of the buyer to take the specific chattel and pay the price is equivalent to his accepting possession.

Where there is a sale of personal property to be paid for in cash, the property in the things sold passes to the buyer, but the seller has the right to re-possession until the money is paid : this is because of his lien for the purchase money. But if he deliver the possession to the buyer without such payment, his lien is gone and the title of the buyer is complete. His remedy is an action on the contract of sale.

So where goods are sold to be paid for on credit, whether generally, or upon notes, bills, bonds, or the like, to be given, and they are deliverd to the buyer upon such general credit, or before the security is given, where it is stipulated for, the property and title to them against the seller is complete : his remedy is on the agreement, or by reason of it.

Where goods are sold to a person upon a false representation as to his solvency or ability to pay, and it does not appear from the evidence, either directly, or by reasonable inference, that the sale was made in whole or in part, under the influence of such representation, the seller cannot rescind the contract of sale on the ground of false representation, and retake the goods if they have been delivered to the buyer. But if the sale were made by reason of such representation, it may be avoided, and the goods, if they have been delivered, retaken from the custody of the buyer.

He may likewise refuse to deliver the goods bought, where they have not been delivered, upon the same ground. The reason is, because the fraudulent representation, in virtue of which the contract of sale was made, vitiated such contract and made it voidable, at the option of the seller.

But if in the case of such vitiated contract of sale, the goods sold have been delivered to the buyer, who sells them to another who buys them *bona fide*, without any notice or knowledge on his part of the fraudulent feature of the sale, such innocent purchaser

20

acquires a valid title to them, which cannot be defeated by the original seller. Likewise, where, after possession has been obtained by a party who purchases under a fraudulent representation as to his solvency, they be levied upon by an execution issued at the suit of a *bona fide* judgment creditor, having no notice or knowledge of any such representation, his execution lien cannot be disturbed by, but will hold good against, the defrauded seller.

It is the law of this State, as decided in the case of *Mears & Son v. Waples*, that mere insolvency of the buyer, well known to himself and concealed from the seller, does not in itself furnish sufficient grounds for recinding a contract of sale. Nor will the fraudulent purchasing and obtaining of goods with an intention of never paying for them, of itself render the contract of sale absolutely void, even as between the seller and buyer; yet it will render it voidable at the election of the seller, but if the goods are sold by such fraudulent buyer to an innocent purchaser for value, the latter will take and hold them by a valid title.   3 Houst., 321; 4 Houst., 62.

In order to entitle the plaintiff to recover at all, you must be satisfied from the proof in the cause, of two things—1st, that he made the sale to Forbes & Banks upon or by reason of a false representation made at the time of their financial condition; in determining this, you must take the evidence given you by the defendant, Banks, as well as that of the plaintiff, and the evidence also of the actual condition of Forbes & Banks; and 2d, that the execution of Edwin R. Banks was issued upon a judgment entered on a bond made fraudulently, and not *bona fide*.

In any event, if the plaintiff with his replevin took any property other than the spokes shipped by him, the defendants are entitled to a verdict for their value, although you may decide to give the plaintiff a verdict for the value of the spokes remaining at the time the sheriff served the replevin.

Verdict for plaintiff.